Jones, Judge,
delivered the opinion of the court:
Plaintiffs seek to recover the cost of furnishing and installing 532 steel column casings or guards which .they claim were not required by the terms of their contract for the construction of a Government building.
The contract, dated June 5, 1936, called for the construction of two buildings, one for the Bureau of Engraving and Printing, and one for the Department of Agriculture. Plaintiffs were to furnish all materials and labor and perform all necessary work. The contract price was $4,657,300. Drawings and specifications were made a part of the contract.
Plaintiffs on July 8, 1936, entered into a subcontract with the Potts Manufacturing Company by the terms of which the latter agreed to furnish all materials and appliances and perform all labor necessary to furnish and install steel and iron required by section 17 of the specifications for the Bureau of Engraving and Printing building and as shown on the plans therefor. The subcontract called for the installation of steel guards or casings around all free-standing columns contemplated by the construction contract between plaintiffs and defendant.
In the small-scale drawings 576 free-standing columns are indicated. In the detail drawings only 44 such columns are shown.
A column guard or casing, according to the contract, was a jacket placed around a column to protect it from injury.
When the subcontractor prepared its estimate for bidding all the drawings and schedules were available and in hand. It claimed that it should have been required to construct only the column guards or casings shown on the detail drawings, *504 whereas the defendant required that the number indicated in the small scale drawings be constructed. Since the scope of the subcontractor’s obligation covered the undertaking of the principal contractor on the particular items, that obligation in so far as it is in issue here, must be measured by the terms of the original contract.
Did the contract (including the drawings, schedules, and specifications) call for'the furnishing of the 532 casings?
In the facts of this case we find that it did.
Article 2 of the contract contains this provision:
ARTICLE 2. Specifications and drawings. — * * * Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both.
Section 1-36 of the specifications is as follows:
This specification is intended to supplement the drawings and, therefore, it will not be its province to mention any portion of the construction which the drawings are competent to explain, and such omission shall not relieve the contractor from carrying out such portions indicated only on the drawings, and should items required by the specification not indicated on the drawings they shall be supplied even if of such nature that they could have been indicated thereon.
Section 17-2 of the specifications provides:
Details cited under this heading are referred to only as illustrative of the character of the work required and are not assumed to show the extent of the work specified or shown on drawings not mentioned by number.
' Detail drawings usually on a larger scale than the small-scale drawings are frequently used to more clearly illustrate particular portions of the work to be done. That was true here.
The subcontractor was required by the plaintiffs to install 532 steel column casings, in accordance with the decision of the supervising engineer, in addition to the 44 which it had contemplated in submitting its bid.' The plaintiffs have not paid the subcontractor any additional amount for the 532 casings.
However regardléss of the rights as between the subcontractor and the contractor, a proper analysis of the plaintiffs’ *505 contract with the Government shows an obligation on their part to install or have installed the 532 casings.
The small-scale drawings were part and parcel of their contract. When read in connection with the finish schedules they show clearly that the controverted casings were included. In the light of the provisions of the contract and specifications, plaintiffs could not ignore their obligation to install the casings in controversy. ,
To permit recovery it would be necessary for us to read out of the contract the small-scale drawings and schedules which purported to be complete, and which were specifically a part of the contract, and to read into the contract as exclusive the detail drawings as superseding them. We know of no authority which justifies such an interpretation. They were all a part of the contract. When the two are examined together it becomes manifest that the detail drawings were intended to illustrate portions of the work on a larger scale. We cannot justify anyone undertaking the work in failing, whether by oversight or otherwise, to consider the small-scale drawings and finish schedules along with other provisions of the contract.
There were two small discrepancies between the detail and the small-scale drawings. The detail drawing called for slate instead of steel in the electrolytic plating room and for higher casings in the lumber room. Slate was used in the electrolytic plating room because of the tendency of acid to corrode and destroy the steel. The higher jackets were used in the lumber room because of the added danger of injury to the columns. These conflicts were adjusted and plaintiffs were paid for the difference in the materials thus used.
Plaintiffs insist that because the materials called for in the large-scale drawings were used it is thus shown that the large scale drawings superseded the small-scale drawings and finish schedules. This position is untenable. Far from showing such a substitution, the fact that plaintiff was paid an additional amount for such changes is evidence that the large-scale drawings did not govern to the exclusion of the other drawings and. schedules. If the plaintiffs’ contention were córrect that they were authorized to rely wholly on the large-scale drawings, they would not have been entitled to extra pay for the use of materials shown on such drawings.
*506 The defendant made certain changes in the work during construction which required 104 steel casings of the same type as those under consideration. Plaintiffs received payment for these under a change agreement and they are not in issue.
Defendant urges that because of the position and authority of the Supervising Engineer, as set out in finding 20, his decision was final in the absence of a showing that it was arbitrary or capricious. However, in view of what has been said it is not necessary to inquire into the question of whether the Supervising Engineer had authority to interpret the provisions of the contract or whether his interpretation was final.
In accepting final voucher for contract payment plaintiffs, at the request of the subcontractor, reserved the present claim from final settlement.
Plaintiffs are not entitled to recover and the petition is dismissed.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.